IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CARLYLE INVESTMENT MANAGEMENT, L.L.C., TC GROUP, L.L.C., and TCG HOLDINGS, L.L.C., <br><br> Plaintiffs, <br><br> v. <br><br> CARLYLE CAPITAL CORPORATION LIMITED (in Liquidation), a Guernsey limited company, ALAN JOHN ROBERTS, NEIL MATHER, CHRISTOPHER MORRIS, and ADRIAN JOHN DENIS RABIT, solely in their capacity as Joint Liquidators of Carlyle Capital Corporation (in Liquidation), a Guernsey limited company, <br><br> Defendants. | Civ. No. 11-26-SLR |

Thomas C. Grimm, Esquire, R. Judson Scaggs, Jr., Esquire, Jeremy A. Tigan, Esquire, and Angela C. Whitesell, Esquire of Morris, Nichols, Arsht and Tunnell, LLP, Wilmington, Delaware. Counsel for Plaintiffs. Of Counsel: Robert A. Van Kirk, Esquire, R. Hackney Wiegmann, Esquire, Nicholas J. Boyle, Esquire, Sarah F. Teich, Esquire, Jonathan E. Pahl, Esquire, and Colleen E. Maring, Esquire of Williams and Connolly, LLP.

Kurt M. Heyman, Esquire and Melissa N. Donimirski, Esquire of Proctor Heyman, LLP, Wilmington, Delaware. Counsel for Defendants. Of Counsel: Eric L. Lewis, Esquire and A. Katherine Toomey, Esquire of Baach, Robinson and Lewis, PLLC.

**MEMORANDUM OPINION**

Dated: August 4, 2011
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Carlyle Investment Management, L.L.C. ("CIM"), TC Group, L.L.C. ("TC Group"), and TCG Holdings, L.L.C. ("TCGH") (collectively, "plaintiffs"), filed the present action against Carlyle Capital Corporation Limited (in liquidation) ("CCC") and Joint Liquidators Alan John Roberts, Neil Mather, Christopher Morris, and Adrian John Denis Rabit (collectively, "the liquidators") in the Court of Chancery of the State of Delaware ("Court of Chancery") on December 29, 2010. (D.I. 1, ex. A at 24, ¶ 5) Plaintiffs seek an anti-suit injunction ordering the liquidators to suspend their litigation in all jurisdictions other than Delaware consistent with the forum selection clause in the Investment Management Agreement ("IMA"). (Id. at ¶ 37) The liquidators removed the action from the Court of Chancery to this court on January 7, 2011. (D.I. 1 at 1) On January 21, 2011, plaintiffs filed a motion for expedited remand to the Court of Chancery pursuant to 28 U.S.C. § 1447(c). (D.I. 4) On January 26, 2011, the liquidators filed a motion to dismiss these proceedings under Fed. R. Civ. P. 12(b)(6). (D.I. 8) Plaintiffs followed with a motion for preliminary injunctive relief pursuant to Fed. R. Civ. P. 65(a) seeking to restrain the liquidators from prosecuting claims against plaintiffs in any forum other than Delaware. (D.I. 29) Currently before the court are plaintiffs' motions to remand and for a preliminary injunction, and the liquidators' motion to dismiss.

## II. BACKGROUND

### A. Contractual Issue

CIM is a Delaware limited liability company (D.I. 1, ex. A at 25, ¶ 6) that served as the investment manager for CCC (Id. at ¶ 14) pursuant to the terms of the IMA. (Id. at ¶

16) TCG is a global investment management firm and an affiliate of CIM. (*Id.*) TCGH is its sole managing member. (*Id.*)

CCC was organized as a limited liability company under the laws of Guernsey on August 29, 2006 and operations commenced in September 2006. (*Id.* at ¶ 15) CIM and CCC entered into the IMA on or about September 20, 2006. (*Id.* at ¶ 16) The IMA governs the relationship between CIM and CCC. (*Id.* at ¶ 34) Mourant-Ozannes ("Ozannes"), a Guernsey law firm, provided advice regarding the formation and operation of CCC and reviewed the IMA. (*Id.*) CIM managed CCC under the IMA from September 2006 until March 2008. (*Id.* at ¶ 29)

CCC issued a preliminary Private Placement Memorandum ("PPM") to potential private investors in September 2006 following review by Ozannes. (*Id.* at ¶ 20) The PPM discussed and described the IMA and informed potential investors that a copy of the IMA would be provided upon request. (*Id.*) The final version was published to all potential and actual private investors in December 2006 and contained the same disclosures. (*Id.* at ¶ 22) Further, in June 2007, CCC published an Offering Memorandum, for the public sale of Class B shares, which also described the IMA. (*Id.* at ¶ 24)

### B. Procedural History

#### 1. The first Chancery action

"CCC invested primarily in Agency (i.e., Freddie Mac or Fannie Mae) residential mortgage-backed securities, and used repurchase agreements to finance such investments." (*Id.* at ¶ 25) Following two declines in the market, CCC defaulted on certain of its financing agreements on March 6, 2008 and was placed into liquidation on March 17, 2008. (*Id.* at ¶¶ 25-27) Joint Liquidators were appointed by the Royal Court of

3

Guernsey. (*Id.*)

On July 7, 2010, the liquidators filed four substantively identical lawsuits against plaintiffs and CCC's former directors in the Court of Chancery of the State of Delaware ("the first Chancery action"), the Supreme Court of the District of Columbia (the "District of Columbia litigation"), the Royal Court of Guernsey (the "Guernsey litigation") and the Supreme Court of the State of New York (the "New York litigation").[1] (*Id.* at ¶ 30; D.I. 6, ex. 1) The complaints, drafted at least in part by Ozannes (D.I. 1, ex. A at 29, ¶ 31), contained eighteen separate causes of action including breaches of fiduciary and other duties, breach of contract (namely, the IMA), negligence or gross negligence and unjust enrichment. (*Id.* at ¶ 32)

The downfall of CCC occurred during the credit crisis of 2007 and 2008, and plaintiffs invested hundreds of millions of dollars of financing into CCC at this time in an effort to keep it afloat. (D.I. 5 at 3) Despite plaintiffs' attempt to aid CCC and CCC's own assertion that the conduct of other parties led to its collapse,[2] the liquidators, in all four suits, alleged that plaintiffs, along with CCC's former directors, mismanaged CCC and bear full responsibility for CCC's losses.[3] (*Id.* at 4) Further, the liquidators seek a

---

[1] The court has not been provided with identifying civil action numbers for these actions.

[2] "The liquidators have asserted publicly that the [repurchase] lenders (not affiliated with [plaintiffs]) that financed CCC's investments engaged in 'dubious' conduct causing CCC's collapse." (D.I. 5 at 4)

[3] Complaints filed by the liquidators in the four jurisdictions (including the first Chancery action) describe "how plaintiffs and CCC's former directors recklessly, and in breach of duty, dissipated nearly one billion dollars in the short space of eighteen months." Further, the liquidators allege that the IMA is not enforceable because "[it] was not reached at arms length; rather, it was unilaterally imposed upon CCC at the

4

declaratory judgment that the "IMA is void and/or unenforceable or in the alternative, that clauses 2(b), 6, and 9 of the IMA[4] are void and/or unenforceable by [plaintiffs] and/or any of [its] respective affiliates as against the [liquidators]." (*Id.* at 5) All causes of action and allegations asserted against CIM are connected to and/or are made with respect to the services CIM provided under the IMA.[5] (D.I. 1, ex. A at 30, ¶ 33)

In a letter sent to plaintiffs' counsel on July 7, 2010 while the first Chancery action was pending, the liquidators indicated their preference to litigate the case on its merits in the Court of Chancery. (*Id.* at ¶ 35) On October 6, 2010, the parties executed a stipulation setting forth a schedule for briefing motions to dismiss. (*Id.* at ¶ 36) The parties also agreed to defer further litigation in the other three jurisdictions pending negotiations to stay or dismiss those proceedings. (*Id.*) On October 22, 2010, plaintiffs

---

direction of [plaintiffs] . . . and was the result of overreaching, unconscionability and the exercise of [plaintiffs'] control, undue influence and unequal bargaining power over CCC . . . ." The liquidators also allege that a majority of the claims are governed by Guernsey law. (D.I. 16 at 2)

[4] Section 2(b) provides that "[CIM] shall not be liable for any act or omission, error of judgment or mistake of law or for any loss suffered by the Fund in connection with matters to which this Agreement relates, except a loss resulting from willful misconduct or gross negligence (as determined in accordance with the laws of the State of Delaware) in the conduct of its duties under this Agreement.
Section 6 states in part that "[CCC] hereby agrees to indemnify and hold harmless . . . [CIM] and its affiliates and the officers, directors . . . from and against any loss, expense, . . . unless such act or failure to act was the result of willful misfeasance, gross negligence (as determined in accordance with the laws of the State of Delaware), bad faith, or reckless disregard . . . with respect to the obligations of [CIM] hereunder.
Section 9 provides that the IMA shall be governed by Delaware law and that Delaware Courts, federal or state, have exclusive jurisdiction over any action, suit or proceeding with respect to the IMA. (D.I. 1, ex. A at 40-47)

[5] The liquidators allege that TC Group and TCGH provided investment advice and management services to CCC, as affiliates of and through CIM. (D.I. 1, ex. A at ¶ 34)

5

here (defendants in the first Chancery action): (1) filed a motion to dismiss for failure to state a claim (*Id.* at ¶ 37); (2) challenged the assistance of Ozannes in the filing of the liquidators' complaint (D.I. 5 at 1); and (3) filed a motion to disqualify based on Ozannes' previous representation of CIM during the drafting of the IMA. (*Id.* at 9) The parties to the first Chancery action did not object to personal jurisdiction, the Chancery Court's equitable jurisdiction, venue, forum or service of the lawsuit as consistent with the terms of the IMA. (*Id.*) Proceedings in the other three jurisdictions were adjourned pending determination of plaintiffs' motion to dismiss the Chancery litigation. (D.I. 1, ex. A at 31-32, ¶ 38)

On December 15, 2010, Vice Chancellor Strine held a hearing in which counsel for the liquidators explained their "de facto" agreement with plaintiffs to litigate in Delaware, as well as all parties' expectation and CCC's intent that litigation would proceed "solely" in Delaware. (*Id.* at ¶ 40) The liquidators explained that "the reason why Delaware was selected as a potential forum is that there is an investment management agreement that is one of the agreements that is at issue in the complaint . . . that invoked the Delaware forum." (*Id.*) Vice Chancellor Strine ordered discovery into the liquidators' use of Ozannes, including production of documents and depositions of Ozannes' lawyers. (*Id.* at ¶ 41) Until December 16, the liquidators asserted that the District of Columbia, Guernsey, and New York lawsuits were "protective" only and that they had no intention of litigating the merits of their claims in those jurisdictions unless the first Chancery action was dismissed by the court on "non-merits" grounds. (*Id.* at ¶ 44) However, on December 16, 2010, the liquidators voluntarily dismissed the first Chancery action and stated their intent to proceed with their action in the Royal Court of Guernsey. (*Id.* at ¶

42) The District of Columbia and New York litigations are ongoing. (D.I. 5 at 10) The Guernsey litigation has been stayed in favor of proceeding in Delaware, the Royal Court of Guernsey having found that "the importance to be attached to the exclusive jurisdiction clause in the IMA outweighs any of the factors that would point in favour of Guernsey." (D.I. 51, ex. A at ¶ 151)

### 2. The second Chancery action

On December 29, 2010, plaintiffs filed a second action in the Court of Chancery seeking to enjoin all of the liquidators' lawsuits but for their pending litigation in Delaware. (D.I. 1, ex. A at 24, ¶ 5) Plaintiffs further sought a declaration that the forum selection clause contained in the IMA was valid and binding, and money damages (including attorney fees) suffered as a result of the liquidators' breach of the forum selection clause. (Id. at ¶ 5) The liquidators removed the second Chancery action to this court on January 7, 2011, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (D.I. 1 at 1) On January 21, 2011, plaintiffs filed a motion for remand under 28 U.S.C. § 1447(c) (D.I. 4) seeking remand to the Court of Chancery before the Guernsey proceedings are advanced in any material way. (D.I. 5 at 2) Plaintiffs also seek payment of just costs and actual expenses incurred as a result of the removal. (D.I. 4) Subsequently, on January 26, 2011, the liquidators filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, to stay proceedings in favor of the Guernsey litigation. (D.I. 8) On February 28, 2011, pursuant to Fed. R. Civ. P. 65(a), plaintiffs filed a motion for preliminary injunctive relief seeking to restrain the liquidators from prosecuting claims against plaintiffs in the cases in any other action with respect to the IMA in any court not sitting in Delaware. (D.I. 29)

## III. STANDARD OF REVIEW

The exercise of removal jurisdiction is governed by 28 U.S.C. § 1441(a). The statute is strictly construed, requiring remand to state court if any doubt exists over whether removal was proper. *See Abels v. State Farm Fire & Casualty Co.*, 770 F.2d 26, 29 (3d Cir. 1985). The party seeking removal bears the burden to establish federal jurisdiction. *See Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987); *Zoren v. Genesis Energy, L.P.*, 195 F. Supp. 2d 598, 602 (D. Del. 2002). That burden is a high one when seeking to avoid a forum selection clause. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972), *overruled on other grounds by Lines v. Chesser*, 490 U.S. 495 (1989); *ING Bank, FSB. v. Palmer*, Civ. No. 09-897, 2010 WL 3907825 (D. Del. Sept. 29, 2010) at *1 (holding that a strong presumption exists in favor of enforcing a forum selection clause). "A forum selection clause does not oust a court of subject matter jurisdiction." *M/S Bremen*, 407 U.S. at 12. However, "while the federal court has jurisdiction, it should decline to exercise it." *Foster v. Chesapeake Ins. Co., Ltd.*, 933 F.2d 1207, 1212 N. 7 (3d Cir. 1991). "Such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen*, 407 U.S. at 10. To prove that enforcement is unreasonable, the resisting party must make a "strong showing" either that: (1) the forum selected is "so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court;" or (2) the forum selection clause was obtained through "fraud or overreaching." *Id.* at 15, 18.

## IV. DISCUSSION

Remand is appropriate whenever any doubt exists as to whether removal was

8

proper. See Abels, 770 F.2d at 29. Moreover, a strong presumption exists in favor of enforcing a forum selection clause, such as that found in section 9 of the IMA, which states the following:

> This Agreement shall be governed by, and construed in accordance with, the laws of Delaware, without giving effect to the choice of law principles thereof. The **federal or state courts sitting in Delaware shall have exclusive jurisdiction** over any action, suit or proceeding with respect to this Agreement and **each party hereto hereby irrevocably waives, to the fullest extent permitted by law, any objection that it may have, whether now or in the future, to the laying of venue in, or to the jurisdiction of, any and each of such courts** for the purposes of any such suit, action, proceeding or judgment and further waives any claim that any such suit, action, proceeding or judgment has been brought in an inconvenient forum, and each party hereto hereby submits to such jurisdiction. The parties hereby agree that no punitive or consequential damages shall be awarded in any such action, suit or proceeding.

(D.I. 1, ex. A at 26, ¶ 19) (emphasis added) Clearly, both the Court of Chancery and this court are appropriate forums under section 9 of the IMA. Having filed the second Chancery action in Delaware's Court of Chancery, plaintiffs chose an appropriate forum. This is especially relevant as the action involves state law claims.

To rebut a presumption of enforceability of a forum selection clause, the liquidators must make a "strong showing" that enforcement is "unreasonable" by proving that: (1) the forum selected is "so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court;" or (2) the forum selection clause was obtained through "fraud or overreaching." M/S Bremen, 407 U.S. at 15, 18. Absent either finding, contractual forum selection clauses are binding on the parties that agree to them. See Foster, 933 F.2d at 1216-17 (finding that defendant, by consenting to submit to "any court" of competent jurisdiction "at the request of the plaintiff," agreed to go to and **stay in** the forum chosen by plaintiff) (emphasis added); QVC Inc. v. Your Vitamins, Inc.,

Civ. No. 10-094, 2010 WL 4873108 at *3 (D. Del. Nov. 29, 2010) (a forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting establishes: (1) it is the result of overreaching; (2) enforcement violates public policy; or (3) enforcement would be unreasonable) (citation omitted)).

Here, the liquidators cannot show that the Delaware forum selected is "gravely difficult and inconvenient;" they filed the first Chancery action and manifested their intention to litigate in Delaware with no objections raised as to jurisdiction or venue. (D.I. 1, ex. A at ¶¶ 35, 42, 44) Alternatively, the liquidators have not made a "strong showing" that the forum selection clause was obtained through "fraud or overreaching." *M/S Bremen*, 407 U.S. at 15. Although the liquidators, in the first Chancery action, alleged that the IMA was not enforceable because "[it] was not reached at arms' length . . . and was the result of overreaching, unconscionability and the exercise of [plaintiffs'] control, undue influence and unequal bargaining power over CCC" (D.I. 16 at 2), these allegations are conclusory. Further weakening their argument is the fact that Ozannes, the Guernsey law firm that provided advice regarding the formation and operation of CCC and reviewed the IMA during its compilation (D.I. 1, ex. A at 30, ¶ 34), is now serving as the liquidators' counsel in the Guernsey litigation (*id.* at ¶ 31), where the liquidators have withdrawn their claim that the IMA is invalid and unenforceable. (D.I. 50) Given this record, there is no indication that the forum selection clause in the IMA is "unreasonable." See *M/S Bremen*, 407 U.S. at 10.

The court concludes, therefore, that the liquidators have waived their right to object to plaintiffs' choice of forum or to remove the litigation from plaintiffs' chosen forum. This conclusion is consistent with the waiver language of section 9 as interpreted

in analogous cases. For example, in *E.I. Du Pont De Nemours & Co. v. Quality Carriers, Inc.*, Civ. No. 10-534, 2011 WL 776211 (D. Del. Feb. 28, 2011), the court found that a similar forum selection clause ("the Parties hereby reciprocally and irrevocably waive in advance any and all objections to the Delaware courts as forums . . . .") effected a waiver, as "the forum selection clause clearly indicate[d] that the parties irrevocably waive[d] the right to remove." *Id.* at *3.

The fact that the liquidators did not themselves execute the IMA is of no moment. In *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149 (3d Cir. 1989), the debtor signed a customer agreement with defendant containing an arbitration clause compelling arbitration of controversies between parties arising out of their brokerage relationship. *Id.* at 1150. After the debtor filed for chapter 11 relief, the trustee filed claims for breach of contract and other fiduciary duties. *Id.* Although the trustee had not signed the agreement containing the arbitration clause, the Third Circuit found that "the trustee stands in the shoes of the debtor for the purposes of the arbitration clause and that the trustee is bound by the clause to the same extent as would the debtor." *Id.* at 1153.[6] *See also, Bennett v. Liberty Nat'l Fire Ins. Co.*, 968 F.2d 969, 972 n.4 (9th Cir. 1992) ("if the liquidator wants to enforce [insolvent's] rights under its contract, she must also assume its perceived liabilities."). Here, the liquidators stand in the shoes of CCC, wishing to enforce CCC's rights under the IMA by suing plaintiffs for breach of fiduciary and other duties, breach of contract, negligence or gross negligence and unjust

---

[6]The court recognizes that *Hays* involves an arbitration, rather than a forum selection, clause. However, "[a]n agreement to arbitrate before a specific tribunal is, in effect, a specialized kind of forum selection clause," *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974). Therefore, the holding in *Hays* is instructive.

11

enrichment. (D.I. 1, ex. A at 30, ¶ 32) Because this controversy arose out of the relationship between plaintiffs and CCC as governed by the IMA, the liquidators are bound by the forum selection clause contained in that agreement. (D.I. 1, ex. A at 26, ¶ 19)

## V. CONCLUSION

For the reasons stated, plaintiffs' motion for remand to the Court of Chancery is granted. The liquidators' motion to dismiss (D.I. 8) and plaintiffs' motion for preliminary injunctive relief (D.I. 29) are denied as moot. An appropriate order shall issue.